HERMAN RIVERA, Employee/Plaintiff v. GEORGE TRAPP, Employer/Defendant, and/or DAVID BEAUCHEMIN, Employer/Non-Insured Defendant, and/or JOHN SCHUCK, Employer/Non-Insured-Defendant

No. COA98-1527

(Filed 19 October 1999)

1. **Workers' Compensation— injury arose out of and in the course of his employment—not a thrill-seeking employee— acted solely to accomplish job—employer authorized action**

  The Industrial Commission did not err in determining plaintiff-roofer's injuries arose out of and in the course of his employment when plaintiff was injured as a result of falling from a forklift he rode in to move necessary materials to the third floor of a house because: (1) it was not a situation where a thrill-seeking employee took action that bore no resemblance to accomplishing his job; (2) plaintiff acted solely to accomplish the task for which he was hired; and (3) defendant-employer Schuck authorized plaintiff to ride the forklift.

RIVERA v. TRAPP

[135 N.C. App. 296 (1999)]

**2. Workers' Compensation— temporary total disability— election of statute for recovery permissible**

In a case where plaintiff-roofer was injured as a result of falling from a forklift he rode in to move necessary materials to the third floor of a house, the Industrial Commission did not err in assigning plaintiff a rating of temporary total disability under N.C.G.S. § 97-29 instead of N.C.G.S. § 97-31(13) because although plaintiff may not recover under both sections, he may elect to claim under N.C.G.S. § 97-29 if this section is more favorable.

**3. Workers' Compensation— disability—sufficiency of evidence**

In a case where plaintiff-roofer was injured as a result of falling from a forklift he rode in to move necessary materials to the third floor of a house, the Industrial Commission did not err in determining plaintiff has proven a disability under N.C.G.S. § 97-29 because plaintiff has sufficiently shown that his injury has prevented him from earning wages from defendant-employer Schuck or any other employer through evidence that: (1) his arm was "no good" and he could not hold anything heavy; (2) he worked exclusively as a roofer since coming to the United States in 1995; (3) he had continuous pain in his arm and back; and (4) he has been unable to work since the accident.

**4. Workers' Compensation— temporary total disability—evidence of diminished earning capacity—alien without immigration green card or social security card protected by Workers' Compensation Act**

Even though defendant Trapp contends plaintiff-roofer lacks earning capacity since he did not have an immigration green card or a social security card in a case where plaintiff was injured as a result of falling from a forklift he rode in to move necessary materials to the third floor of a house, the Industrial Commission did not err in concluding plaintiff was temporarily totally disabled because plaintiff's injury diminished his earning capacity since: (1) N.C.G.S. § 97-2(2) makes clear that the General Assembly sought to protect every employee engaged in an employment, including aliens like plaintiff; and (2) plaintiff also presented evidence that prior to the injury, he did in fact have earning capacity as a roofer.

**5. Workers' Compensation— knowingly allowed employer to work without insurance—willfully neglected to bring employer into compliance**

In a case where plaintiff-roofer was injured as a result of falling from a forklift he rode in to move necessary materials to the third floor of a house, the Industrial Commission did not err in finding that defendant Trapp willfully neglected to bring defendant-employer Schuck into compliance with the requirements of N.C.G.S. § 97-93 because: (1) Trapp admitted he did not require Schuck to provide a certificate as proof that Schuck had workers' compensation insurance; (2) Trapp admitted he had taken Schuck to obtain insurance after plaintiff fell; (3) Trapp also stated he has not seen defendant Schuck since plaintiff fell; (4) Trapp admitted he discovered Schuck had no insurance while Schuck was in the process of retiling the roof; and (5) Trapp's testimony allowed the Commission to conclude that he knowingly allowed Schuck to work without insurance.

Appeal by defendant from opinion and award of the North Carolina Industrial Commission filed 27 July 1998. Heard in the Court of Appeals 20 September 1999.

*Brumbaugh, Mu & King, P.A., by Kenneth W. King Jr., for plaintiff-appellee.*

*Stephen E. Culbreth for defendant-appellant George Trapp.*

EAGLES, Chief Judge.

Defendant George Trapp appeals from the opinion and award of workers' compensation benefits to plaintiff Herman Rivera.

The Commission's findings tend to show the following. Plaintiff was an eighteen year old male who came to the United States from Honduras in 1995. He speaks little English and does not possess an Immigration Service "Green Card" or a Social Security number. Plaintiff worked as a roofer first in Texas, then in Indiana prior to coming to North Carolina in the fall of 1996. Plaintiff came to North Carolina due to the abundance of work available after the two hurricanes of that year. Plaintiff worked for several months in North Carolina prior to meeting Defendant John Schuck. Defendant Schuck hired plaintiff and two of plaintiff's friends to work as roofers on two homes damaged by hurricane Fran. Schuck was to pay plaintiff $12.00 an hour for ten hours a day, six days a week. Immediately

prior to working for Schuck, plaintiff earned $100.00 a day, six days a week.

Defendant David Beauchemin hired Trapp to complete the necessary construction work on Beauchemin's home in Topsail Beach. While Trapp referred to himself as a consultant, the Commission found that Trapp was actually a contractor. Trapp hired and negotiated with the subcontractors. Additionally, he wrote checks for labor and materials and fired at least one subcontractor whose work was unsatisfactory. The contract between Beauchemin and Trapp required all contractors who worked on the home to have workers' compensation insurance.

Trapp hired Schuck to roof Beauchemin's home. Schuck represented to Trapp that he was licensed and insured. Schuck drove a truck with a sign that read "Regional Roofing Contractors" and represented that he worked for Regional. Prior to hiring him, Trapp failed to obtain a certificate of insurance from Schuck. Soon after hiring him, Trapp discovered that Schuck did not have workers' compensation insurance. Despite this discovery, Trapp allowed Schuck to continue roofing Beauchemin's house. Neither Beauchemin nor Trapp had workers' compensation insurance.

On 3 January 1997, plaintiff was working, roofing Beauchemin's house for Schuck. In order to complete the job, someone placed roofing materials on a forklift borrowed from an adjacent jobsite. Plaintiff climbed into the forklift in order to ride with the materials to the roof. Upon reaching the third story of the house, the forklift and plaintiff fell. The fall injured the left side of plaintiff's upper chest and fractured his left radius. Plaintiff had never used a forklift in this fashion, although he had seen it done before.

An ambulance transported plaintiff to Onslow Memorial Hospital where he spent five days. As a result of the fall, plaintiff suffered a fracture of his distal left radius and contusions to his abdomen and chest. After his discharge, orthopedist Dr. Jeffrey Gross treated plaintiff. On 12 June 1997, Dr. Gross assigned a ten percent (10%) permanent partial disability rating to plaintiff's left arm.

Since plaintiff's injury, he has not been able to work or earn wages. The injury to his left arm prevents him from lifting anything heavy. Additionally, plaintiff's limited ability to understand English and his exclusive employment background in construction have contributed to his inability to find work.

[1] Based on those facts the Commission concluded that plaintiff's injury arose out of and in the course of his employment with Schuck. The Commission concluded that plaintiff was entitled to temporary total disability at a rate of $400.00 per week from 4 January 1997 until further order of the Industrial Commission. The award also required Trapp and Schuck to pay for plaintiff's medical expenses. The Commission also concluded that Trapp had the ability and authority to stop Schuck from working until Schuck acquired workers' compensation insurance. As a result of Trapp's failure to bring Schuck into compliance, the Commission fined Trapp $10,000. The Commission also fined Schuck $50.00 per day for each day beginning 1 January 1997 and ending 3 January 1997. Defendant Trapp appeals.

The standard of review for an appeal from an opinion and award of the Industrial Commission is limited to a determination of (1) whether the Commission's findings of fact are supported by any competent evidence in the record; and (2) whether the Commission's findings justify its conclusions of law. *Aaron v. New Fortis Homes, Inc.*, 127 N.C. App. 711, 714, 493 S.E.2d 305, 306 (1997). This is true even when there is evidence that would support contrary findings. *Ross v. Mark's Inc.*, 120 N.C. App. 607, 610, 463 S.E.2d 302, 304 (1995). Trapp challenges the Commission's findings and conclusions that plaintiff's injury arose out of and in the course of his employment.

In order for plaintiff to recover benefits under the Act, he must show that his injuries resulted from (1) an accident, (2) arising out of his employment, and (3) within the course of his employment. *Pickrell v. Motor Convoy, Inc.*, 322 N.C. 363, 366, 368 S.E.2d 582, 584 (1988). Under the Workers' Compensation Act, the term "arising out of the employment refers to the origin or cause of the accidental injury, while the words in the course of the employment refer to the time, place, and circumstances under which an accidental injury occurs." *Roberts v. Burlington Industries*, 321 N.C. 350, 354, 364 S.E.2d 417, 420 (1988) (citations omitted). Further, whether an injury arose out of and in the course of employment is a mixed question of law and fact. *Id.* This standard limits our review to whether the evidence supports the Commission's findings and conclusions. *Id.; Shaw v. Smith & Jennings, Inc.*, 130 N.C. App. 442, 445, 503 S.E.2d 113, 116, *disc. review denied*, 349 N.C. 363, 525 S.E.2d 175 (1998) (citations omitted).

In order for an injury to "arise out of employment" there must exist some causal connection between the injury and the employ-

ment. *Hoyle v. Isenhour Brick and Tile Co.*, 306 N.C. 248, 252, 293 S.E.2d 196, 198 (1982). In other words, the employment must be a contributing cause or bear a reasonable relationship to the employee's injuries. *Roberts*, 321 N.C. at 355, 364 S.E.2d at 417; *Brown v. Service Station*, 45 N.C. App. 255, 256-57, 262 S.E.2d 700, 702 (1980). An injury is "in the course of employment" when it occurs "under circumstances in which the employee is engaged in an activity which he is authorized to undertake and which is calculated to further, directly or indirectly, the employer's business." *Shaw*, 130 N.C. App. at 446, 503 S.E.2d at 116 *(quoting Powers v. Lady's Funeral Home*, 306 N.C. 728, 730, 295 S.E.2d 473, 475 (1982)). This Court has stated that an injury is compensable under the Act if "it is fairly traceable to the employment" or "any reasonable relationship to the employment exists." *Shaw*, 130 N.C. App. at 445, 503 S.E.2d at 116; *White v. Battleground Veterinary Hosp.*, 62 N.C. App. 720, 723, 303 S.E.2d 547, 549, *disc. review denied*, 309 N.C. 325, 307 S.E.2d 170 (1983).

Here, plaintiff needed the materials in order to repair the roof. Plaintiff testified that while he had never used a forklift to move materials to a roof, he had seen it done on other jobs. Further, plaintiff stated that everything he used went up to the roof by use of the forklift. By moving the materials to the roof, plaintiff was furthering his employer's business. Additionally, plaintiff testified that Schuck authorized him to use the forklift. These facts show that plaintiff acted to benefit his employer and that his injury occurred as a direct result of his employment.

Trapp claims that the case of *Teague v. Atlantic Company*, 213 N.C. 546, 196 S.E. 875 (1938) controls here. We disagree. In *Teague*, an employee died while attempting to ride a conveyor belt. *Id.* at 547, 196 S.E. at 875. The belt's purpose was to convey empty crates from the basement of employer's plant to the first floor. *Id.* The foreman expressly ordered all employees not to ride the conveyor. *Id.* The Supreme Court held that the deceased exceeded the scope of his employment and that the plaintiff's death was not compensable. *Id.* at 548, 196 S.E. at 875.

We find *Teague* distinguishable. *Teague* dealt with a situation where a thrill-seeking employee took action that bore no resemblance to accomplishing his job. *Hoyle*, 306 N.C. at 259, 293 S.E.2d at 201. Here, the record shows that plaintiff acted solely to accomplish his job. Plaintiff rode on the forklift to move necessary materials to

the third floor. While this action may have been outside the "narrow confines of his job description" as a roofer, it is clear that plaintiff's actions were reasonably related to the accomplishment of the task for which he was hired. *See Id.* at 259, 293 S.E.2d at 202-03. Further, in *Teague*, the foreman had given the plaintiff an express order not to ride the conveyor belt. *Teague*, 213 N.C. at 547, 196 S.E.2d at 875. Here, plaintiff testified that Schuck authorized him to ride the forklift. We hold that this evidence supports the Commission's findings and conclusions that plaintiff's injury arose out of and in the course of his employment.

**[2]** Trapp also alleges that the Commission erred by assigning plaintiff a rating of temporary total disability under G.S. § 97-29 (1991) instead of compensating him under G.S. § 97-31(13) (1991). Trapp claims that plaintiff's exclusive remedy was under G.S. § 97-31(13). We disagree. G.S. § 97-29 and G.S. § 97-31 are alternative avenues of recovery for an employee whose scheduled injuries leave him or her totally disabled. *See Hill v. Hanes Corp.*, 319 N.C. 167, 175-76, 353 S.E.2d 392, 397 (1987); *Dishmond v. Int'l Paper Co.*, 132 N.C. App. 576, 577, 512 S.E.2d 771, 772, *disc. review denied*, 350 N.C. 828, —— S.E.2d —— (1999). G.S. § 97-29 provides compensation for total disability, while G.S. § 97-31 furnishes a list of specific injuries and corresponding compensations. *Dishmond*, 132 N.C. App. at 577, 512 S.E.2d at 772. This statutory scheme exists to prevent double recovery, not to dictate an exclusive remedy. *Gupton v. Builders Transport*, 320 N.C. 38, 43, 357 S.E.2d 674, 678 (1987) (citations omitted). Our Supreme Court has stated, "[e]ven if all injuries are covered under the scheduled injury section an employee may nevertheless elect to claim under G.S. § 97-29 if this section is more favorable; but he may not recover under both sections." *Hill*, 319 N.C. at 176, 353 S.E.2d at 398.

**[3]** Trapp alleges that plaintiff has not proved disability under G.S. § 97-29. Disability is the "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." G.S. § 97-2(9) (Supp. 1998). Plaintiff may prove disability by evidence that (1) the employee is physically or mentally incapable of work in any employment as a result of the injury; (2) the employee is capable of some work but, after reasonable efforts, has been unsuccessful in obtaining other employment; (3) the employee is capable of some work but it would be futile to seek work because of preexisting conditions such as age, inexperience, lack of education; or (4) the employee has obtained

employment at a wage less than that earned prior to the injury. *Russell v. Lowes Product Distribution,* 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).

The Commission found as fact:

18. As a result of plaintiff's work-related injury on 3 January 1997, plaintiff has been unable to work or earn any wages since 4 January 1997 and continuing through the date of hearing before the Deputy Commissioner. His left arm still gives him problems and he cannot lift anything heavy. Plaintiff's limited ability to understand English, coupled with his exclusive background in construction work, has contributed to his inability to find work since his compensable injury.

Plaintiff testified at the hearing that his arm was "no good," and that he could not hold anything heavy. He also testified that he had worked exclusively as a roofer since coming to the United States in 1995. He stated that he had continuous pain in his arm and back. Further, he has been unable to work since the accident. Plaintiff's doctor also assigned him a ten percent (10%) impairment rating for his left wrist. Plaintiff has sufficiently shown that his injury has prevented him from earning wages from Schuck or any other employer. *See Hendrix v. Linn-Corriher Corp.,* 317 N.C. 179, 345 S.E.2d 374 (1986). We hold that this evidence is sufficient to support the Commission's finding of fact. We also hold the finding of fact supports plaintiff's rating of temporary total disability.

[4] Trapp suggests that plaintiff's injury did not diminish plaintiff's earning capacity. According to Trapp, no one can legally employ plaintiff because he has no Immigration Service "Green Card" or Social Security card. Because plaintiff lacks earning capacity, Trapp claims the Commission could not conclude that plaintiff was temporarily totally disabled. We find this argument unpersuasive. G.S. § 97-2(2) (Supp. 1998) defines employee to include "every person engaged in an employment . . . including aliens." The statute makes clear that the General Assembly sought to include individuals like the plaintiff under the protections of the Workers' Compensation Act. Further, plaintiff presented sufficient evidence to show that prior to the injury he did in fact have earning capacity as a roofer.

[5] Next Trapp challenges the Commission's findings and conclusions that Trapp willfully neglected to bring Schuck into compliance with the requirements of G.S. § 97-93 (Supp. 1998). Trapp claims that

he did not know that Schuck lacked Workers' Compensation insurance until after plaintiff fell. Therefore, he argues that the Commission could not conclude that he willfully neglected to bring Schuck into compliance with Chapter 97. We disagree. G.S. § 97-94 (Supp. 1998) states that the Commission may assess a civil penalty of up to one hundred percent (100%) of the amount of any compensation due to the employer's employees for any person who has the ability and authority to bring an employer into compliance with G.S. § 97-93 and fails to do so. G.S. § 97-93 requires every employer subject to the provisions of the Workers' Compensation Act "to insure and keep insured his liability under this Article."

It is well known that, "the Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Pittman v. International Paper Co.*, 132 N.C. App. 151, 156, 510 S.E.2d 705, 709, *disc. review denied*, 350 N.C. 310, —— S.E.2d —— (1999). Thus, the Commission may assign more weight and credibility to certain testimony than others. Moreover, if the evidence before the Commission is capable of supporting two contrary findings, the determination of the Commission is conclusive on appeal. *Dolbow v. Holland Industrial*, 64 N.C. App. 695, 697, 308 S.E.2d 335, 336 (1983), *disc. review denied*, 310 N.C. 308, 312 S.E.2d 651 (1984).

On this issue, Trapp's testimony is confusing at best. Trapp admits that he did not require Schuck to provide a certificate as proof that Schuck had workers' compensation insurance. Therefore, he allowed Schuck to work without having tangible evidence of any insurance. Trapp testified that he took Schuck to obtain insurance after he learned that Schuck did not have any. Trapp stated that this trip occurred after plaintiff fell. However, he also testified that he had not seen Schuck since plaintiff's fall. Further, Trapp answered affirmatively to a question that he took Schuck to obtain insurance before the fall. Trapp also testified that he discovered Schuck had no insurance while Schuck was in the process of retiling the roof. Plaintiff's injury occurred during this process. If Trapp did not see Schuck after the injury, then the Commission could have concluded that Trapp knew about Schuck's lack of insurance prior to the fall. Trapp's testimony also allows the Commission to conclude that Trapp knowingly allowed Schuck to work without insurance. This finding is sufficient to support a conclusion that Trapp willfully neglected to bring Schuck into compliance with Chapter 97.

For the foregoing reasons we affirm the opinion and award of the Industrial Commission.

Affirmed.

Judges MARTIN and TIMMONS-GOODSON concur.